## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:   ROBERT H. QUINN, JR. and                                              No. 7-12-10079 JA
            STEPHANIE S. QUINN,

            Debtors.

### MEMORANDUM OPINION

THIS MATTER is before the Court following a final, evidentiary hearing on the merits

of the United States Trustee's Amended Motion to Dismiss Pursuant to 11 U.S.C. § 707(a) or

Alternatively Convert to a Chapter 11 Proceeding ("UST's Motion to Dismiss or Convert" –

Docket No. 69) held December 5, 2012.[1]  Ronald E. Holmes appeared on behalf of the Debtors,

Dr. Robert H. Quinn, Jr. and Stephanie S. Quinn.  Ronald Andazola appeared on behalf of the

United States Trustee.  The heart of the parties' dispute is whether there is a good faith

requirement  for seeking relief under Chapter 7 of the Bankruptcy Code, and, if so, what factors

must be present to demonstrate a lack of good faith  sufficient to dismiss a debtor's bankruptcy

case for "cause" under 11 U.S.C. § 707(a).  After careful consideration of the applicable statutes

and relevant case law, the Court concludes that lack of good faith on the part of a debtor, whether

pre- or post-petition, or both, is a relevant consideration in determining whether to dismiss a

chapter 7 case under 11 U.S.C. § 707(a) for cause, and, if sufficiently egregious, may alone be

sufficient to constitute cause to dismiss.  This conclusion is subject to two limiting principles

described below.

---

[1]Before the final hearing, the Debtors filed a motion to dismiss the UST's Motion to Dismiss or Convert.  *See*
Debtors' Motion to Dismiss under Rule 7012(b)(6) for Failure to State a Claim upon Which Relief Can Be Granted
Regarding United States Trustee's Amended Motion to Dismiss ("Motion").  Docket No. 66.   The Motion was fully
briefed by both parties, but the Court elected to hear the evidence before ruling on the Motion.  *See* Order Denying
Debtors' Motion to Continue Final Hearing Set for December 5, 2012 at 9:00 a.m. on the United States Trustee's
Motion to Dismiss under 11 U.S.C. § 707(a) (Docket No. 93.

The Court further concludes, after careful consideration of the evidence and testimony admitted at the final hearing, that the United States Trustee has not demonstrated cause to dismiss the Debtors' non-consumer Chapter 7 bankruptcy case. Nor does the evidence establish sufficient grounds to grant the United States Trustee's alternative request to convert the Debtors' case to Chapter 11.

FINDINGS OF FACT

Dr. Robert Quinn is a cancer surgeon who is currently employed at the University of Texas, San Antonio. Before moving to San Antonio, he was employed as a cancer surgeon in Albuquerque, New Mexico. In the 1990s Dr. Quinn began investing in real estate and "flipping" properties for a profit. Beginning in 2005, with the downturn in the economy, the Debtors had several investment properties in Montana and New Mexico that they were not able to sell.

In an attempt to "stay afloat" and ride it out until markets recovered, Dr. Quinn raised funds from various sources to make debt service on loans secured by investment properties while at the same time maintaining the lifestyle to which he and his family were accustomed. Most of the real estate loans were made by Bank of America. Dr. Quinn liquidated $350,000 in a retirement account, for which he was assessed a $25,000 penalty. The Debtors borrowed $200,000 from Dr. Quinn's mother. The Debtors liquidated a $100,000 life insurance policy, and cashed out investment accounts. In 2006, 2007, and 2008 the monthly mortgage payments for the various properties exceeded $15,000.

The Debtors are repaying the loan made by Dr. Quinn's mother at the rate of $3,000.00 per month. She is elderly and suffered substantial losses in the recent recession. She relies on the loan payments for support. The Debtors also attempted to work with Bank of America in an effort to restructure loans, but such efforts were not successful. Further, Bank of America was

-2-

unwilling to accept a deed in lieu of foreclosure on one of the investment properties (known as Spanish Peaks), and, instead, foreclosed on the property.

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on January 11, 2012. Their Schedules reflect approximately $2.1 million of secured debt undersecured by about $90,000, no tax debt, and about $700,000 of unsecured debt. About $500,000 of the unsecured debt is a deficiency liability following a foreclosure sale of the Debtors' Spanish Peaks investment property. This deficiency liability precipitated commencement of the Chapter 7 case. About 75% of the remaining $200,000 of unsecured debt is owed to Dr. Quinn's mother. Because of the large amount of debt associated with the Debtors' real estate, including their investment properties, the Debtors' debts are not primarily consumer debts.

The Debtors' Schedule A lists five properties: 1) the Debtors' residence at 44 Cedar Hill Place in Albuquerque, valued at $800,000 subject to a secured claim in the amount of $764,171.00; 2) an investment property in Montana located at 58 Scenic Drive ("Scenic Drive "Property") valued at $510,000, subject to a secured claim in the amount of $520,177; 3) an investment property in Montana located at San Marino, Unit 1 ("San Marino Property"), valued at $600,000, subject to a secured claim in the amount of $627,089; and 4) three vacant lots in Stanley, New Mexico valued at $10,000 each, not subject to a secured claim. The Debtors intend to surrender their Albuquerque Residence and the 58 Scenic Drive Property, and retain the San Marino Property. *See* UST T-2. The foreclosure of the Spanish Peaks property is disclosed in the Debtors' Statement of Financial Affairs.

While the Debtors lived in Albuquerque, Dr. Quinn worked at the University of New Mexico ("UNM") with a base salary of $540,000 plus the opportunity to earn performance

bonuses. He supplemented his income with on call duty and consulting fees earned for evaluations and testimony in litigation. In 2011, Dr. Quinn earned over $44,968 in consulting fees. Schedule I reflects average gross monthly income of $45,000 (which is $540,000 ÷ 12). Consulting fees were not included in the income reported on Schedule I.

Line 17 of Schedule I requires a description of "any increase or decrease in income reasonably anticipated to occur within one year following the filing of this document." On line 17 the Debtors reported "Income from rental property known as San Marino Unit 1 in Montana varies and is seasonal." *See* UST T-1. In December of 2011, Dr. Quinn accepted a position as Chairman of the Department of Orthopedics at University of Texas, San Antonio ("UTSA") but had not commenced such employment before filing the Chapter 7 case. Dr. Quinn earns $570,000 from his employment at UTSA, and can earn incentive pay up to $68,400 per year. The potential to earn incentive pay is uncertain. He was paid a one- time signing bonus of $50,000 in the form of a retirement annuity. The Debtors did not disclose on Schedule I the expected increase in salary from Dr. Quinn's new job at UTSA. Mrs. Quinn is a nurse. Schedule I discloses that her monthly income as of the filing of the bankruptcy petition was $2,250.00. She is not currently working. Line 17 does not disclose the expected loss of that income.

Schedule J reflects average monthly expenses of $22,228 and monthly net income of $7,402. The Debtors did not include their $3,000 monthly loan repayment to Dr. Quinn's mother on Schedule J, though they did identify the loan in their Schedules and the loan repayments in their Statement of Financial Affairs. *See* UST T-1. Schedule J lists monthly recreation expenses of $300.00. Dr. Quinn testified that those expenses are in fact more.

-4-

Schedule B identifies the following vehicles: 2011 Toyota Tundra; 2005 Lexus RX 450; 2011 Subaru Imprezza; 2007 Gulf Stream RV; 2011 Mercedes. The Debtors intend to reaffirm the debt on the 2011 Mercedes, the Subaru Imprezza, the Lexus, and the Toyota Tundra, and surrender the Gulf Stream RV. *See* UST T-2.

After leaving his employment at UNM, Dr. Quinn received a payment of $18,000 representing unused annual leave. This amount was not disclosed in the Debtors' Schedules or Statement of Financial Affairs.

Pre-petition, the Debtors entered into a purchase agreement for a home in San Antonio on December 26, 2011 for a purchase price of $955,000. The transaction closed post-petition. The Debtors did not list the purchase agreement for the residence in San Antonio on Schedule G, which requires disclosure of executory contracts. To raise the money for the down payment on the San Antonio residence, the Debtors withdrew approximately $125,000 from Dr. Quinn's VALIC retirement account at UNM.

At the time they commenced their Chapter 7 case, the Debtors were in the process of closing an account at Bank of America as part of their transition to San Antonio, and opening a new account at Wells Fargo to replace the account at Bank of America. Although the Bank of America account was not closed as of the filing of the petition, the Debtors did not list their account at Bank of America on their Schedules or Statement of Financial Affairs.

The Debtors owned a horse that they purchased for approximately $35,000 to $40,000 that their daughter used in competition. The Debtors returned the horse to the brokerage farm in Kansas that had arranged their purchase of the horse but were unable to sell it. The Debtors then transferred the horse to the brokerage farm to avoid further costs of ownership. Neither the horse, nor the transfer of the horse, is listed anywhere in the Debtors' Schedules or Statement of

-5-

Financial Affairs. Dr. Quinn viewed the horse as a "negative asset" because the cost of caring for and feeding the horse prior to the attempted sale exceeded its value.

Within several months prior to, and after, the filing of the Chapter 7 case, the Debtors took several trips. It is their "family tradition" to go to Montana for a Christmas vacation each year and to stay at their investment property. The Debtors and their family also took a family ski vacation to Wolf Creek over Thanksgiving, travelled to Hawaii for spring break, and went to Phoenix for a soccer tournament. The Debtors also travelled to Ireland in connection with a professional seminar for Dr. Quinn. This travel was consistent with the Debtors' historical lifestyle.

After commencing the Chapter 7 case, the Debtors have made efforts to reduce expenses. In an effort to control household expenses, Mrs. Quinn's monthly household expense budget has been reduced to $6,000.

The Debtors have three children, one of whom now attends Texas Christian University. Although she has a partial scholarship, the Debtors pay tuition for her in the approximate amount of $17,000.00 per year. While the Debtors lived in Albuquerque, they paid for private school for all three children. In San Antonio, the Debtors' two younger children now attend public school.

In preparing the Schedules and Statement of Financial Affairs, Dr. Quinn relied on information from his bank account statements, two credit reports, and his Quicken books account records. His 2011 tax returns had not yet been prepared at the time that he filled out the Schedules and Statement of Financial Affairs. In completing the Schedules and Statement of Financial Affairs, Dr. Quinn believed he was making his best estimate, though in retrospect, he believes all figures, both income and expenses, were underestimated. The Debtors believed, on advice of counsel, that they were not required to disclose the salary from Dr. Quinn's new

position at UTSA on Line 17 of Schedule I because it did not represent more than a 10% increase in expected salary. Had the Debtors been able to sell the Spanish Peaks property, Dr. Quinn believes that they would not have had to file a bankruptcy case.

DISCUSSION

"Cause" under 11 U.S.C. § 707(a)

The United States Trustee seeks dismissal of the Debtors' bankruptcy case for "cause" under 11 U.S.C. § 707(a) based on the Debtors' ability to pay debt and their continuing a lavish lifestyle, and the Debtors' failure to make various disclosures in their Statement of Financial Affairs and Schedules, including a pre-petition change in employment and consequent increase in income. *See* UST's Motion to Dismiss or Convert, ¶¶ 3 – 8, 11-14.[2] The Debtors' who together earn more than $560,000.00 a year, filed this Chapter 7 bankruptcy case seeking to discharge approximately $700,000 in unsecured debts and potential deficiency claims associated with secured debts estimated to be approximately $80,000 *See* Schedules D and F – Exhibit UST –T-1. They assert that there simply is no good faith requirement for seeking Chapter 7 bankruptcy relief.

At first blush, it may appear that Dr. and Mrs. Quinn are not the type of persons who need Chapter 7 relief. The Debtors earn more than $560,000.00 a year, with additional incentive pay potential, which by any objective measure seems more than sufficient in 2012. *Cf. In re Rahim,* 442 B.R. 578, 581 (Bankr.E.D.Mich. 2010)(observing that "[b]y any objective measure, the debtors [whose annual income was at least $509,352] simply do not need chapter 7 relief."). They drive luxury cars and have recently purchased a new home for $955,000. *See* UST T-60. One of the principal goals of bankruptcy is to provide an "honest but unfortunate debtor" with a

---

[2] The United States Trustee did not seek dismissal under 11 U.S.C. § 707(b), which applies only to debtors whose debts are primarily consumer debts.

-7-

fresh start.  *See Dalton v. Internal Revenue Service (In re Dalton),* 77 F.3d 1297, 1300 (10th Cir.

1996)("The purpose of the Bankruptcy Code is to provide the honest, but unfortunate debtor a

fresh start.")(citing *Grogan v. Garner,* 498 U.S. 279, 286-87, 111 S.Ct. 654, 659-60, 112

L.Ed.2d 755 (1991)).[3]  The United States Trustee alleges that despite filing for bankruptcy

protection, the Debtors plan to retain late model luxury automobiles and an investment property

in Montana, and to continue a lavish lifestyle as evidenced by their post-petition family trips out

of state.  *See* UST's Motion to Dismiss or Convert, ¶¶ 6, 11, 14.  None of these circumstances

are "unfortunate." *Cf. Rahim,* 442 B.R. at 583 (observing that "[t]here is nothing 'unfortunate'

about an annual income of $370,000 or owning two Lexus automobiles.").  However, the

Debtors have suffered other misfortunes, having lost a substantial portion of their wealth in the

recession.  It is not the province of this Court to make value judgments about who deserves

chapter 7 relief.  *Cf. In re Huckfeldt,* 39 F.3d 829, 832 (8th Cir. 1994)(pointing out the legitimate

concern "that the bad faith inquiry will be 'employed as a loose cannon which is to be pointed in

the direction of a debtor whose values do not coincide precisely with those of the

court.'")(quoting *In re Latimer,* 82 B.R. 354, 364 (Bankr.E.D.Pa. 1988)).  The Court must

carefully examine the relevant sections of the Bankruptcy Code to determine whether the

Debtors are entitled by law to seek Chapter 7 relief.

Section 707(a) of the Bankruptcy Code governs dismissal of Chapter 7 bankruptcy cases

based on "cause."  That section provides, in relevant part:  "[t]he court may dismiss a case under

this chapter only after notice and a hearing and only for cause, including" dismissal on three

enumerated grounds.[4]  "Cause" is not otherwise defined.  *See Huckfeldt,* 39 F.3d at 831

---

[3] *See also, In re Ford,* 492 F.3d 1148, 1154 (10th Cir. 2007)(stating that "the fresh start philosophy of the Code
'limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate
debtor.'")(quoting *In re Young,* 237 F.3d 1168, 1178 (10th Cir. 2001)).
[4] Section 707(a) provides in full:

(observing that "[i]n authorizing dismissal 'for cause,' the statute does not define 'cause,' beyond setting forth three specific examples."); *McDow v. Smith,* 295 B.R. 69, 74 (E.D.Va. 2003)(observing that "'[c]ause' is not expressly defined in § 707(a)"); *In re Lobera,* 454 B.R. 824, 835 (Bankr.D.N.M. 2011)(J. Starzynski)("'Cause' is not defined in the bankruptcy code."). Use of the word "including" in a section of the Bankruptcy Code is not limiting. 11 U.S.C. § 102(3)("In this title 'includes' and 'including' are not limiting.").[5] Thus, the fact that "bad faith" or a "lack of good faith" is not included among the enumerated grounds for "cause" does not unequivocally eliminate bad faith as a basis for finding sufficient "cause" for dismissal under 11 U.S.C. § 707(a). *See Zick),* 931 F.2d at 1126-1127 (reasoning that "including" as used in § 707(a) is not limiting, and concluding that a lack of good faith is a valid cause for dismissal).[6]

Two Circuit Courts, the Sixth Circuit and the Third Circuit, have held that a lack of good faith can constitute "cause" for dismissal under 11 U.S.C. § 707(a). *See Zick,* 931 F.2d at 1127 ("lack of good faith is a basis for dismissal under § 707(a)"); *In re Tamecki,* 229 F.3d 205, 207

---

The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –

    (a)   unreasonable delay by the debtor that is prejudicial to creditors;

    (b)   nonpayment of any fees or charges required under chapter 123 of title 28; and

    (c)   failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States Trustee.

11 U.S.C. § 707(a).

None of these three enumerated grounds are applicable in this case.

[5]*See also, Huckfeldt,* 39 F.3d at 831 ("Use of the introductory word 'including' [in § 707(a)] means that these three types of 'cause' are nonexclusive.")(citations omitted); *In re Padilla,* 222 F.3d 1184, 1191 (9th Cir. 2000)("The grounds that §707(a) lists as providing "cause" for dismissal are illustrative and not exhaustive.")(citations omitted); *Indus. Ins. Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124, 1126 (6th Cir. 1991)("We are satisfied that the word 'including' [in 707(a)] is not meant to be a limiting word.")(citations omitted).

[6]*But compare Lobera,* 454 B.R. at 841-842 (reasoning that under the statutory construction rule of *ejusdem generis* (meaning that, where specific words in a statute follow a general term, application of the general term is limited to matters that are similar to the specific words) a lack of good faith is *not* consistent with the other enumerated grounds for cause found in 11 U.S.C. § 706(a) which all relate to post-petition technical and procedural violations, and concluding that "bad faith" cannot constitute "cause" for dismissal under 11 U.S.C. § 707(a)) *with McDow v. Smith,* 295 B.R. at 74-75 (also relying on the statutory construction cannon of *ejusdem generis,* but finding that a debtor's bad faith acts or omissions "fall into the same class of such acts or omissions as do the three illustrative examples of 'cause' for dismissal[,]" and concluding that "cause" for dismissal under 11 U.S.C. § 707(a) includes bad faith).

(3rd Cir. 2000)(relying on *Zick,* stating that "Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing.")(citations omitted).[7]  In *Huckfeldt,* the Eighth Circuit took a slightly different approach, reasoning that "framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7," and holding that a court's determination of whether to dismiss a Chapter 7 bankruptcy case under 11 U.S.C. § 707(a) is "better conducted under the statutory standard, 'for cause.'"  *Huckfeldt,* 39 F.3d at 832.  "[B]ad faith under § 707(a) [should] be limited to extreme misconduct  falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor . . . " *Id.* (citing *In re Khan,* 172 B.R. 613, 624-626 (Bankr.D.Minn. 1994)).

The Ninth Circuit has held that "bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)." *Padilla,* 222 F.3d at 1191.  Like the Eight Circuit, the Ninth Circuit holds that conduct constituting cause to dismiss a Chapter 7 case must fall outside the purview of more specific provisions of the Bankruptcy Code.  Based on the rule of statutory construction that the specific provision takes precedence over the general, the Ninth Circuit reasoned that "[a] debtor's misconduct should be analyzed under the most specific Code provision that addresses that type of misconduct."  *Padilla,* 222 F.3d at 1192 (citation omitted).  Under the Ninth Circuit's approach, conduct that falls within the Bankruptcy Code's provisions governing objections to discharge or dischargeability of debts cannot constitute cause for dismissal under 11 U.S.C. § 707(a).

---

[7]*See also, Perlin v. Hitachi Capital America Corp.,* 497 F.3d 364, 369 (3rd Cir. 2007)(acknowledging the holding of *Tamecki,* and considering whether the court may take into account the debtor's ability to pay in adjudicating a motion to dismiss under 11 U.S.C. § 707(a) for "cause.").

Several courts, including this Court, have held that pre-petition bad faith conduct can constitute cause for dismissing a Chapter 11 case.[8] Courts have also held that pre-petition bad faith conduct can constitute cause for dismissing a Chapter 13 case.[9] However, Chapter 11 and Chapter 13 differ from Chapter 7 inasmuch as there is an express good faith requirement for filing a plan found in 11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1129(a).[10] Moreover, Chapter 13 has an explicit good faith filing requirement that the debtor must satisfy as a condition to confirmation of a plan. *See* 11 U.S.C. § 1325(a)(7)("the action of the debtor in filing the petition was in good faith."). However, Chapter 7 differs from reorganization chapters in that Chapter 7 debtors do not continue their financial relationship with their pre-petition unsecured creditors. In exchange for discharging their unsecured debts, Chapter 7 debtors surrender all of their non-exempt assets to the Chapter 7 Trustee for administration through the bankruptcy estate.[11]

---

[8] *See, e.g., Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir. 1994)(stating that while "section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal.")(citations omitted); *In re Pacific Rim Investments, LLP,* 243 B.R. 768, 771 (D.Colo. 2000)("[A] Chapter 11 Petition must be filed in good faith, and if not, dismissal of the case is an appropriate remedy.")(citing *Udall v. FDIC (In re Nursery Land Dev., Inc.),* 91 F.3d 414 (10th Cir. 1996)); *In re Copperas Creek, LLC,* 2012 WL 3061477, *4 (Bankr.D.N.M. July 26, 2012)(acknowledging that "[a] debtor's bad faith in filing a petition can constitute 'cause' for dismissal under §1112(b).")(citation omitted). *Cf. Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 372, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007)(holding that a debtor who acts in bad faith does not have an absolute right to convert from Chapter 7 to Chapter 13 under 11 U.S.C. § 706(a)); *Laguna Associates Ltd. P'ship v. Aetna Casualty & Surety Co. (In re Laguna Associates Ltd. P'ship),* 30 F.3d 734 (6th Cir. 1994)("bad faith" filing of Chapter 11 petition constituted sufficient "cause" for relief from the automatic stay); *In re Joung,* 2011 WL 2413633, *2-*3 (Bankr.D.N.M. June 10, 2011) (considering the debtor's pre- and post- petition behavior in evaluating "bad faith" conduct that may be sufficient to deny a debtor's request to convert from Chapter 7 to Chapter 11 under 11 U.S.C. §706(a)).

[9] *See, e.g., Gier v. Farmers State Bank (In re Gier),* 986 F.2d 1326, 1329 (10th Cir. 1993)(adopting "totality of circumstances" test for determining whether a Chapter 13 case has been filed in bad faith under § 1307); *In re Lanham,* 346 B.R. 211, 214 (Bankr.D.Colo. 2006)(stating that "[l]ack of good faith is shown . . . when a debtor's conduct before or during a case constitutes an abuse of the provisions, purpose, or spirit of the chapter under which relief is sought" and dismissing Chapter 13 case based on debtors' bad faith filing)(citation omitted); *In re Virden,* 279 B.R. 401, 409 (Bankr.D.Mass. 2002)(pre-petition conduct is relevant to determination of dismissal based on bad-faith filing).

[10] Those sections provide:

The plan has been proposed in good faith and not by any means forbidden by law

11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1129(a)(3).

[11] *See Huckfeldt,* 39 F.3d at 832 (acknowledging the suggestion "that a different standard of conduct should be applied to debtors willing to surrender all non-exempt assets in a Chapter 7 liquidation proceeding")(citation omitted); *Padilla,* 222 F.3d at 1193 (reasoning that because there is no post-petition debtor-creditor relationship in a

Nevertheless, the Bankruptcy Code's general purpose of providing relief to honest but unfortunate debtors is served by all chapters. And the term "cause," which is the ground for dismissal under 11 U.S.C. § 707(a), expresses an elastic concept that gives bankruptcy courts considerable discretion to establish its parameters outside of any specific examples of cause included in the statute.[12] The Court, therefore, concludes that a "bad faith filing" may constitute "cause" for dismissal of a Chapter 7 bankruptcy case under 11 U.S.C. § 707(a). A lack of good faith on the part of a debtor, whether pre- or post-petition, or both, is a relevant consideration in determining whether to dismiss a chapter 7 case under 11 U.S.C. § 707(a) for cause, and, if sufficiently egregious, may alone be sufficient to constitute cause to dismiss.[13] The Court is mindful that a bad faith inquiry under a generalized cause standard should not be used as a means for the Court to impose value judgments on who deserves Chapter 7 relief. For this reason, the Court finds that even though a "bad faith filing" may constitute "cause" for dismissal under 11 U.S.C. § 707(a), the Court's bad faith inquiry must be tempered by two specific limitations.

---

chapter 7 case, relief under chapter 7 should be available to any debtor willing to surrender all non-exempt assets, regardless of the debtor's motive in filing for bankruptcy).

[12]*Cf. In re Milford Connecticut Associates, L.P.,* 389 B.R. 303, 307-308 (Bankr.D.Conn. 2008), *aff'd,* 404 B.R. 699 (D.Conn. 2009)(stating that "'cause' is a highly flexible standard, not limited to the specific examples of the same enumerated in Section 1112(b)[governing dismissal in Chapter 11 cases].");*In re Gillikin,* 2011 WL 7268050, *3 (Bankr.S.D.Ga. Nov. 21, 2011)(noting that "'[c]ause' is a broad and flexible term in the Code . . . ").

[13]*Cf. In re Hammonds,* 139 B.R. 535, 541 (Bankr.D.Colo. 1992)(stating that "[a] debtor's good faith is an implicit jurisdictional prerequisite to the filing of a case under the Bankruptcy Code.")(citations omitted); *In re Carbaugh,* 299 B.R. 396, 398 (Bankr.N.D.Tex. 2003)(determining "that a finding of bad faith can be cause for dismissal of a Chapter 7 case under Bankruptcy Code §707(a)."); *In re Jones,* 114 B.R. 917, 926 (Bankr.N.D.Ohio 1990)(the "good faith requirement also comports with the bankruptcy court's role as a court of equity, where those seeking relief must approach the court with clean hands and honorable purpose.")(citation omitted). *See also, Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 (5th Cir. 1986)(evaluating a motion for relief from stay for "cause" in Chapter 11 case, and observing that "[e]very bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.")(citations omitted). *But see, e.g., Lobera* 454 B.R. at 853 (holding that there is no good faith requirement for non-consumer Chapter 7 debtors*); In re Etcheverry,* 242 B.R. 503, 506 (D.Colo. 1999)(concluding that "the absence of this [good faith] language in the Bankruptcy Code's liquidation chapter, Chapter 7, means that Congress did not incorporate a good faith requirement when a bankruptcy court rules on motions to dismiss under 11 U.S.C. § 707(a).").

First, dismissal of a Chapter 7 case for cause may not be based exclusively or primarily on a debtor's substantial financial means or ability to repay creditors. *See,* e.*g., In re Smith*, 507 F.3d 64, 74 (2nd Cir. 2007)(a debtor's ability to repay debts is not per se grounds for dismissal for cause but is part of the inquiry); *Perlin,* 497 F.3d at 374 (stating that "a bankruptcy court's ultimate finding of bad faith may not be based exclusively or primarily on a debtor's substantial financial means. Otherwise, dismissal would essentially be based upon a debtor's mere ability to repay, which is expressly prohibited by the legislative history."); *In re Turpen*, 244 B.R. 431, 434 (8th Cir. BAP 2000)("the ability of the Debtors to repay their debts does not constitute adequate cause for dismissal.")(citations omitted); *McDow v. Smith,* 295 B.R. at 78 ("A debtor's ability to repay debts is, by itself, not 'cause' for dismissal under § 707(a)."); *In re Blok,* 2011 WL 4344594, *2 (Bankr.S.D.Ind. Sept. 15, 2011)(observing that "the vast majority of courts agree that ability to repay, standing alone, is not enough to establish bad faith.")(citing *In re Falch,* 450 B.R. 88 (Bankr.E.D.Pa. 2011)(remaining citations omitted).

Second, dismissal of a Chapter 7 case for cause may not be based exclusively or primarily on a debtor's conduct that forms the basis for objections to discharge under 11 U.S.C § 727 or objections to dischargeability of particular debts under 11 U.S.C. § 523. Where the Bankruptcy Code provides a specific remedy for misconduct, a Court may not dismiss a Chapter 7 case under the more general "cause" standard based exclusively or primarily on that conduct. *See Padilla,* 222 F.3d at 1192 (reasoning that "debtor misconduct falling within the particular circumstances addressed by" a specific Code provision must be analyzed under that provision, and not under the general "cause" provision contained in 11 U.S.C. § 707(a)); *In re Glunk,* 342 B.R.717, 733 (Bankr.E.D.Pa. 2006)(observing that where "other provisions already embedded in the Code are up to the task of ensuring the proper functioning of the bankruptcy system, there is

-13-

no reason to invoke the narrow doctrine of dismissal for lack of good faith.").[14]  In other words, a party cannot substitute a motion to dismiss for "cause" under 11 U.S.C. § 707(a) for a complaint objecting to the grant of a discharge or objecting to the dischargeability of a particular debt.  But when a combination of factors are present, such as pre-petition fraudulent conduct in an effort to place assets beyond the reach of creditors, manipulation of debt to reduce the debtor's creditors to one, filing the petition on the heels of a judgment entered against the debtors with the intent to avoid a large single debt, and multiple, successive bankruptcy filings,[15] the fact that some of the alleged conduct asserted as grounds for dismissal would fit under 11 U.S.C. § 727 or 11 U.S.C. § 523 will not prevent dismissal under 11 U.S.C. § 707(a) based in part on that conduct.  The Court may consider that conduct when evaluating whether there is cause for dismissal under 11 U.S.C. § 707(a).

Courts that consider lack of good faith in evaluating a motion to dismiss under 11 U.S.C. § 707(a) often apply a totality of the circumstances test to evaluate the debtor's good faith on a case-by-case basis.[16]  Factors relevant to that evaluation include:

(1) The debtor's manipulations having the effect of frustrating one particular creditor;

(2) The absence of an attempt to pay creditors;

(3) The debtor's failure to make significant lifestyle changes;

(4) The debtor has sufficient resources to pay substantial portion of debts;

---

[14]*Cf. In re Sherman,* 491 F.3d 948, 970 (9th Cir. 2007)(explaining that under the two-prong approach to "cause" established by *Padilla,* "[i]f the asserted 'cause' is contemplated by a specific Code provision, then it does not constitute 'cause' under §707(a) . . . . If, however, the asserted 'cause' is not contemplated by a specific Code provision, then we must further consider whether the circumstances asserted otherwise meet the criteria for 'cause' . . . under § 707(a).")

[15]*See In re Lombardo,* 370 B.R. 506, 512 (Bankr.E.D.N.Y. 2007)(listing these factors as part of the test to determine "bad faith" for purposes of dismissal under 11 U.S.C. § 707(a)).

[16]*See, e.g., Glunk,* 342 B.R. at 734 (five factor test, including "prepetition fraudulent conduct" and "the debtor's (extravagant) lifestyle and ability to pay"); *In re Keobapha,* 279 B.R. 49, 63 (Bankr.D.Conn. 2002)(fourteen factor test); *Lombardo,* 370 B.R. at 512 (identifying fourteen factors); *In re Cappuccetti,* 172 B.R. 37, 39 (Bankr.E.D.Ark. 1994)(identifying fourteen factors, including overuse of Bankruptcy Code protections "to the unconscionable detriment of creditors" and failure "to make candid and full disclosure").

(5) The debtor inflates expenses to disguise financial well-being, and

(6) The debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors.

*Lombardo,* 370 B.R. at 512 (citing *In re Blumenberg,* 263 B.R. 704, 715 (Bankr.E.D.N.Y. 2001)(citing *In re Griffieth,* 209 B.R. 823, 827 (Bankr.N.D.N.Y. 1996)).[17]  The Court agrees that these factors are relevant to the Court's bad faith inquiry under 11 U.S.C. § 707(a).  Further, lack of good faith on the party of a debtor may be considered in combination with other factors to determine whether to dismiss a Chapter 7 case for cause, such as if there is unreasonable delay by the debtor that is prejudicial to creditors, or the debtor fails to timely provide information required by 11 U.S.C. § 521(a), or the debtor fails to pay the fee for filing the bankruptcy case as required.  Section 707(a) itself gives these three examples of what *may* constitute cause for dismissal.  Even when taking all of the relevant factors into account, dismissal for "cause" under 11 U.S.C. § 707(a) based on a debtor's lack of good faith must be reserved for truly egregious cases.  *See Zick,* 931 F.2d at 1129 (stating that dismissals for lack of good faith "must be undertaken on an *ad hoc* basis.  It should be confined carefully and generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income,

---

[17]In *Keobapha,* the bankruptcy court identified the following fourteen factors:

1. the debtor reduced his creditors to a single creditor in the months prior to filing his petition;
2. the debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
3. the debtor filed the case in response to a judgment pending litigation;
4. the debtor made no effort to repay his debts;
5. the unfairness of the use of Chapter 7;
6. the debtor has sufficient resources to pay his debts;
7. the debtor is paying debts to insiders;
8. the schedules inflate expenses to disguise financial well-being;
9. the debtor transferred assets;
10. the debtor is over-utilizing the protection of the Code to the unconscionable detriment of creditors;
11. the debtor employed a deliberate and persistent pattern of evading a single major creditor;
12. the debtor failed to make candid and full disclosure;
13. the debts are modest in relation to assets and income; and
14. there are multiple bankruptcy filings or other procedural "gymnastics."

*Keobapha,* 279 B.R. at 52 (citing *In re Spagnolia,* 199 B.R. 362, 365 (Bankr.W.D.Ky. 1995)).

Case 12-10079-j7    Doc 113    Filed 12/28/12    Entered 12/28/12 10:50:36 Page 15 of 21

and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.")(internal citation omitted).

B.    Whether the evidence supports a finding of "cause"
      for dismissal under 11 U.S.C. § 707(a)

The United States Trustee requests dismissal of this Chapter 7 case based on the Debtors' ability to pay their debts under Chapter 11, their continuing lavish lifestyle, and their false oaths in connection with information contained in their Schedules and Statement of Financial Affairs. While not admitting the false oath claim or that their lifestyle is lavish, the Debtors assert that under the circumstances of this case these factors do not constitute cause to dismiss the Chapter 7 case.  The Court finds and concludes that this Chapter 7 case should not be dismissed for cause.

The Court notes the absence in this case of certain conduct relevant to dismissal under Section 707(a).  This is the first bankruptcy case either Dr. Quinn or Mrs. Quinn have filed.  The Debtors did not engage in conduct designed to reduce their creditors to a single creditor in the months prior to filing their petition.  The Debtors have made lifestyle adjustments, such as sending their two minor children to public school instead of private school and reducing their monthly budget for household expenses.  The Debtors made an effort to repay their debt to Bank of America.  That is the debt that precipitated the bankruptcy filing and is the principal debt the Debtors seek to discharge.  Dr. Quinn liquidated some $450,000 of exempt assets[18] and borrowed $200,000 from his mother to continue to make debt service to Bank of America. When the economy did not improve sufficiently to allow him to sell his investment properties, he attempted to renegotiate the terms for repayment of the debt and then offered to give Bank of America a deed in lieu of foreclosure, but the bank refused.  Although Dr. Quinn has continued

---

[18]*See* N.M.S.A. 1978 §§ 42-10-1 and 42-10-3 (New Mexico exemption statutes providing exemptions in proceeds from pension or retirement fund and life insurance benefits).

to repay his debt to his mother at the rate of $3,000 per month per their agreement, he did not increase payments to her in contemplation of bankruptcy. Further, she is elderly and relies on the payments to fund her living expenses. There is no evidence that the Debtors intended to conceal information about expected changes in circumstances for the purpose of disguising their financial well-being.

The Debtors have continued to live what many would consider a lavish lifestyle. For example, they drive luxury vehicles, recently purchased a home for $955,000 in San Antonio, Texas, near the hospital where Dr. Quinn works as a cancer surgeon for a base salary of $570,000, and regularly take family vacations at resorts. However, the Debtors' continuing lifestyle is commensurate with their income. Persons who earn a lot of money are also able to spend a lot of money while living within their means. And earning a sizable income is not by itself an indicator of bad faith. It is a goal to which many aspire. Lavish lifestyle and sizable income go hand in hand. Thus, "[i]t is appropriate to list ability to repay and lavish lifestyle as a single factor because these points are closely related." *McDow v. Smith,* 295 B.R. at 80 n. 22. Further, as determined above, "cause" for dismissal under 11 U.S.C. § 707(a) may not be based exclusively or primarily on a debtor's ability to repay debt.

The Debtors' failed to make full and accurate disclosure in their Schedules and Statement of Financial Affairs in a number of respects. They did not disclose an expected increase in income from Dr. Quinn's new position as Chairman of the Department of Orthopedics with the University of Texas in San Antonio that would increase his annual income to $570,000, with eligibility for annual incentive pay up to $68,400.00 plus benefits including a one-time supplemental retirement annuity of $50,000. They did not disclose Mrs. Quinn's decreased income. They understated recreational expenses on Schedule J. They did not disclose the

-17-

prepetition transfer of a horse in their Statement of Financial Affairs or list an executory contract to purchase a new home for $955,000 on Schedule H. These failures on the part of the Debtors to make full and accurate disclosure in their Schedules and Statement of Financial Affairs, which are signed under oath, may constitute grounds for a complaint under 11 U.S.C. § 727(a)(4) objecting to the grant of a discharge in this Chapter 7 case, if such omissions were made "knowingly and fraudulently." 11 U.S.C. § 727(a)(4).

If the Debtors' ability to pay their debts in a Chapter 11 case were the only evidence offered in support of dismissal, the United States Trustee's request for dismissal for "cause" under 11 U.S.C. § 707(a) would fail. Likewise, if the Debtors' false oaths on their Statement of Financial Affairs and Schedules were the only evidence offered in support of dismissal, the United States Trustee's request for dismissal would fail; the Bankruptcy Code provides a specific remedy for such misconduct.[19] To complete the "bad faith" inquiry, the Court must consider the whether the *combination* of those circumstances in this case constitutes cause for dismissal under 11 U.S.C. § 707(a).

Taken altogether, the actions of which the United States Trustee complains do not rise to the level of egregious behavior sufficient to dismiss the Debtors' bankruptcy case under 11 U.S.C. § 707(a).[20] The evidence presented at the final hearing was completely devoid of any indication that the Debtors filed their Chapter 7 petition for any wrongful purpose, that they incurred their debts through their own misconduct, that they systematically attempted to place their assets beyond the reach of creditors, or that they manipulated their finances in an effort to

---

[19] The Court is not making any determination whether a complaint objecting to discharge under 11 U.S.C. §727(a)(4) would have been successful.
[20] *Cf. McDow v. Smith,* 295 B.R. at 82 (concluding that the debtor's apparent ability "to repay his debts over time were he to make significant adjustments in his luxurious lifestyle," and his excessive expenses for living and tuition for private school did not constitute "egregious circumstances" that would warrant dismissal under 11 U.S.C. § 707(a) based on a lack of good faith; none of these factors evidenced any "fraudulent, or otherwise wrongful conduct either in connection with the accumulation of the debt or the filing of the Chapter 7 petition.").

thwart one or more targeted creditors. The Debtors filed a Chapter 7 case to discharge debt to

Bank of America, with whom they attempted a workout pre-petition. That is the principal debt

that will be discharged in this case. The indebtedness to Bank of America is or was secured debt

incurred in commercial real estate transactions. Dr. Quinn liquidated substantial exempt assets

in an effort to pay creditors and avert bankruptcy. The Debtors suffered a misfortune in the

recent recession, and lost a significant portion of their wealth. The Debtors have complied with

their obligations under 11 U.S.C § 521(a). Under the facts and circumstances of this case, cause

does not exist for dismissal under 11 U.S.C § 707(a).

> C. The United States Trustee's Alternative Request:
> Conversion under 11 U.S.C. § 706

The United States Trustee seeks an order converting this Chapter 7 case to a case under

Chapter 11 as an alternative to dismissal. Section 706(b) governs conversion of Chapter 7 cases

on request of a party other than the debtor. It provides:

> On request of a party in interest and after notice and a hearing, the court may convert a
> case under this chapter to a case under chapter 11 of this title at any time.

11 U.S.C. § 706(b).

There are two restrictions to conversion of a debtor's Chapter 7 case on request of an

interested party: 1) the case may not be converted to a case under Chapter 12 or 13 unless the

debtor consents to conversion; and 2) the case may not be converted to a case under Chapter 11

unless the debtor may be a debtor under Chapter 11.[21] Section 706 otherwise provides no

guidance regarding the factors a Court should consider when evaluating an interested party's

request for conversion. Whether to convert a case from Chapter 7 to Chapter 11 falls within the

---

[21] See 11 U.S.C. § 706(c)("The court may not convert a case under this chapter to a case under Chapter 12 or 13 of this title unless the debtor requests or consents to such conversion."); 11 U.S.C. § 706(d)("Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.").

Court's sound discretion.  *See, In re Gordon,* 465 B.R. 683, 692 (N.D.Ga. 2012)("The decision

whether to convert is left to the sound discretion of the court, based on what will most inure to

the benefit of all parties in interest.")(quoting S. Rep. No. 95-989, at 940 (1978), *reprinted in*

U.S.C.C.A.N. 5787, 5880); *Lobera,* 454 B.R. at 853 (Section 706(a) "is not mandatory; the Court

should use its discretion in any decision to convert."); *In re Carrow,* 315 B.R. 8, 16

(Bankr.N.D.N.Y. 2004)("Section 706(b) speaks to what the court 'may' do by exercising its

discretion in cases of involuntary conversion . . .").  Individual non-consumer debtors are subject

to conversion under 11 U.S.C. § 706(b).  *See, Gordon,* 466 B.R. at 690 ("Section 706(b) of the

Bankruptcy Code clearly, on its face, applies to all debtors in Chapter 7."); *In re Lenartz,* 2001

WL 35814401, *2-*3 (Bankr.D.Idaho May 3, 2001)(finding that the plain language of 706(b) is

not limited to business debtors, and pointing out that individual debtors can be forced into

Chapter 11 through an involuntary petition).

        Here, the United States Trustee relies on the same evidence in support of its request for

conversion under 11 U.S.C. § 706(b) as for the request for dismissal under 11 U.S.C. § 707(a).

The Court has determined that the evidence is insufficient to demonstrate cause for dismissal.

The Court likewise finds that the United States Trustee has failed to demonstrate that the

Debtors' case should be converted to Chapter 11.  It is clear to the Court that the United States

Trustee's objective is to force the Debtors to repay their creditors, whether through dismissal and

the re-filing of a Chapter 11 case or through conversion to Chapter 11 under 11 U.S.C. § 706(b).

Under these circumstances, it is not appropriate to compel the same end result through

conversion to Chapter 11 when it is not appropriate to dismiss the Chapter 7 case to compel a re-

filing under Chapter 11 by necessity.  Accordingly, the Court will deny the United States

Trustee's alternative request to convert this case to a case under Chapter 11.

-20-

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law issued pursuant to Fed.R.Bankr.P. 7052, made applicable to contested matters by Fed.R.Bankr.P. 9014(c). A separate order denying the UST's Motion to Dismiss or Convert will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   December 28, 2012

COPY TO:

**Ronald E Holmes**
Attorney for Debtors
112 Edith Blvd NE
Albuquerque, NM 87102-3524

**Ronald Andazola**
Assistant United States Trustee
PO Box 608
Albuquerque, NM 87103-0608